## UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF RHODE ISLAND

|  |  |  |
|---|---|---|
| EZEKIAL JOHNSON, JR., | ) | |
| Petitioner, | ) | |
| | ) | |
| v. | ) | C.A. No. 25-cv-221-JJM-PAS |
| | ) | |
| STATE OF RHODE ISLAND, | ) | |
| Respondent. | ) | |
| | ) | |

## MEMORANDUM AND ORDER

JOHN J. MCCONNELL, JR., United States District Chief Judge.

Ezekial Johnson, Jr. filed a Petition for a Writ of Habeas Corpus, seeking this Court's review of the legality of his state court detention. ECF No. 1. In his Petition, Mr. Johnson asserts three distinct grounds for relief; he challenges (1) the way the State presented DNA testimony at his trial; (2) the State's eyewitness identification methods; and (3) the prosecution's conduct before the grand jury. Before the Court is Respondent State of Rhode Island's ("the State") Motion to Dismiss. ECF No. 10. The State argues that Mr. Johnson's Petition should be dismissed based on *res judicata* and because it fails to meet the high standards necessary for habeas relief. For the reasons below, the State prevails, and Mr. Johnson's Petition is DISMISSED.

## I.    BACKGROUND

The facts in this case, as described in the Rhode Island Supreme Court opinion affirming Mr. Johnson's convictions, are as follows:

On July 16, 2007, Jose Rodriguez was shot and killed while driving his taxicab. Over ten years later, on October 27, 2017, a Providence County grand jury returned an indictment charging [Ezekial Johnson] with one

count of murder; one count of discharging a firearm during the commission of a crime of violence, to wit, murder; and one count of carrying a firearm without a license.  A jury trial was held over two weeks in July 2018. At trial, the testimony revealed the following.

Rodriguez was employed as a taxicab driver for Gonzalez Cab; and, on July 16, 2007, he was dispatched around noon to transport a fare from Providence to Central Falls.  While making the trip, Rodriguez spoke on the telephone to his wife, Anna, and told her that the three men in his taxicab were behaving suspiciously. Soon after Rodriguez shared his concern about the passengers, the call suddenly disconnected. Anna repeatedly attempted to call him back. Although she was unable to reach her husband, one of her calls did connect to his phone, and she heard someone laughing.

At around the same time, Lymari Gonzalez (Gonzalez) was standing outside her home on Garfield Street in Central Falls when she noticed a taxicab that 'was going way too slow.' Gonzalez turned to look at the taxicab and observed three men seated in the back seat. She watched the taxicab as it continued to drive slowly on Garfield Street and then turn right onto Fuller Avenue. After the taxicab turned the corner, Gonzalez heard a gunshot followed by the sound of a crash. Seconds later, she observed the three male passengers from the taxicab running towards her, while they were looking back in the direction of the taxicab; and she watched as two of the men flung the hats they were wearing into the bushes in front of the home . . .

*****

On the evening of the shooting, Gonzalez went to the Central Falls Police Department to report what she had witnessed, including the fact that she had watched two of the men toss the hats that they were wearing into the bushes.  Police officers showed Gonzalez a photographic array, but she did not recognize any of the individuals in the photographs as being the men whom she had seen in the taxicab. Two days later, upon her return to the Central Falls police station, Gonzalez was shown a different photographic array and identified two men she believed she had seen in the taxicab. Those men, however, were subsequently eliminated as suspects. After her second meeting with police, Gonzalez had no further contact with law enforcement until ten years later, in October 2017.

*****

The police also seized the two hats that were thrown into the bushes in front of the home  ***  —one red and one black baseball cap. In 2009, the Central Falls police submitted the hats to the Rhode Island Department of Health (RIDOH) for DNA testing. Although there was DNA found on each hat, the DNA was not compared to any reference sample at that time. Both hats were returned to the Central Falls Police Department along with their corresponding DNA analysis reports.

Nearly seven years after the murder, the police received information concerning Rodriguez's murder from Jon Thomas (Thomas), who subsequently entered into cooperation agreements to provide information in two other criminal cases. Thomas grew up on the south side of Providence and joined the YNIC 'gang' around age thirteen. According to Thomas, a few days after Rodriguez's murder, he met up with fellow YNIC members Jayquan Garlington (Garlington) and [Mr. Johnson]. While the three were together, Garlington told Thomas that Garlington, [Mr. Johnson], and another YNIC member, Dwayne Morris (Morris), had taken a taxicab to Central Falls with the plan of getting out of the taxicab without paying the fare.  According to Thomas, Garlington was upset when he was relaying the story because things had not gone as planned; Garlington told him that, instead of simply exiting the cab without paying, [Mr. Johnson] pulled out a gun and shot the taxicab driver in the back of the head while the driver was talking on his cell phone.  Thomas also recalled that Garlington had stated that, after the driver was shot, the men were laughing because they tripped as they jumped out of the moving taxicab.  As Garlington relayed the story to Thomas, [Mr. Johnson] was laughing and '[n]odding his head up and down.'

In 2017, the Central Falls Police Department sent the hats that were seized from the crime scene back to RIDOH for further DNA analysis. Senior Forensic Scientist, Tamara Wong (Wong), developed DNA reference profiles from buccal swabs taken from [Mr. Johnson], Garlington, and Morris.  When Wong compared the DNA profile from the black hat to the DNA of [Mr. Johnson], she determined that the major component of that DNA was consistent with [Mr. Johnson]'s DNA, with the likelihood that it came from anyone other than [Mr. Johnson] being 'one in a hundred and twenty-eight quintillion.'

*State v. Johnson*, 251 A.3d 872, 875-77 (R.I. 2021) (footnotes omitted).

## II.    PROCEDURAL POSTURE

At trial, a jury found Mr. Johnson guilty of one count of first-degree murder, one count of discharging a firearm during the commission of a crime of violence, and one count of carrying a firearm without a license. *Id.* at 875. The trial court sentenced him to consecutive life sentences on count one and count two and ten years to serve on count three. *Id.* The Rhode Island Supreme Court affirmed his conviction. *Id.* at 888.

Mr. Johnson subsequently filed a postconviction relief ("PCR") application, asking the Rhode Island Superior Court to vacate his murder and firearms convictions. ECF No. 1-5 at 1. He originally raised six grounds for PCR review but chose to press only three of those grounds at a hearing on the State's motion to dismiss the application. ECF No. 8-1 at 1. He asserted that the State: (1) presented false DNA evidence at trial; (2) presented impermissibly suggestive and unreliable eyewitness identification testimony at trial; and (3) engaged in prosecutorial misconduct by knowingly presenting false evidence at the grand jury proceeding. *Id.* The Superior Court dismissed all three grounds based on the doctrine of *res judicata*. ECF No. 11-5 at 1. Mr. Johnson next petitioned the Rhode Island Supreme Court for the issuance of a writ of certiorari to review the Superior Court's order denying his PCR application. ECF No. 11-6 at 1. The Rhode Island Supreme Court denied this petition. ECF No. 11-9 at 1.

Mr. Johnson then filed this federal habeas petition.  ECF No. 1.  The State responded by filing a Motion to Dismiss.  ECF No. 10.  Mr. Johnson objects.  ECF No. 12.

## III.    STANDARD OF REVIEW

This Court is keenly aware of the limited review available to Mr. Johnson. Both United States Supreme Court precedent, *see*, *e.g.*, *Cavazos v. Smith*, 565 U.S. 1 (2011), and the congressional mandate contained in the Antiterrorism and Effective Death Penalty Act of 1996 ("AEDPA"), Pub. L. No. 104-132, 110 Stat. 1214, restrict federal court review of state court convictions and sentences.  AEDPA, as codified in 28 U.S.C. § 2254(d)'s limited review, "reflects the view that habeas corpus is a 'guard against extreme malfunctions in the state criminal justice systems,' not a substitute for ordinary error correction through appeal."  *Harrington v. Richter*, 562 U.S. 86, 102-103 (2011) (quoting *Jackson v. Virginia*, 443 U.S. 307, 332 n.5 (1979) (Stevens, J., concurring in judgment)).

Federal courts "will not review a question of federal law decided by a state court if the decision of that court rests on a state law ground that is independent of the federal question and adequate to support the judgment."  *Coleman v. Thompson*, 501 U.S. 722, 729 (1991).  As applied to habeas cases, "the independent and adequate state ground doctrine is grounded in concerns of comity and federalism."  *Id.* at 730. This doctrine does not bar review, however, where the petitioner "can demonstrate cause for the default and actual prejudice as a result of the alleged violation of federal

law, or demonstrate that failure to consider the claims will result in a fundamental miscarriage of justice." *Id.* at 750.

If a federal court reaches the merits of a habeas claim, the standard of review applicable to a state court's decision depends on whether the state court considered and rejected the petitioner's claim on the merits. *See, e.g., Healy v. Spencer*, 453 F.3d 21, 25 (1st Cir. 2006). Where a claim "was adjudicated on the merits in State court proceedings," a federal court may grant habeas relief only if the State court's "adjudication of the claim" either:

> (1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or (2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.

28 U.S.C. § 2254(d). Factual determinations made by the State court are presumed to be correct, with the petitioner bearing "the burden of rebutting the presumption or correctness by clear and convincing evidence." 28 U.S.C. § 2254(e)(1). If the state court did not consider and reject the petitioner's claim on the merits, then the federal court's review of that claim is de novo. *Norton v. Spencer*, 351 F.3d 1, 5 (1st Cir. 2003).

## IV. ANALYSIS

### A. Ground One: DNA Testimony

Mr. Johnson's first ground for relief relates to the trial testimony of Tamara Wong, the Senior Forensic Scientist at the Rhode Island Department of Health. ECF No. 3 at 46. Ms. Wong compared the DNA profile from the black hat recovered from

the crime scene and testified that a major component of the DNA on the hat "was consistent with [Mr. Johnson's] DNA, with the likelihood that it came from anyone other than [Mr. Johnson] being 'one in a hundred and twenty-eight quintillion.'" *Johnson*, 251 A.3d at 877. Mr. Johnson characterizes Ms. Wong's testimony as "prosecutor fallacy," asserting that "she falsely portrayed and overstated [his] guilt when she used the 128 quintillion number confusing source probability with random match probability." ECF No. 3 at 52.[1] He claims that the State violated his due process rights when it failed to correct this purportedly false and misleading evidence. *Id.* at 57.

### 1. Procedural Default

Mr. Johnson first raised his DNA claim in his PCR application to the Rhode Island Superior Court. ECF No. 8-1 at 2. The state court rejected this claim based on *res judicata* because Mr. Johnson could have challenged the DNA testimony on direct appeal but did not do so. ECF No. 11-5 at 1; ECF No. 11-4 at 6-7, 103-04, 116, 124. Mr. Johnson himself acknowledged his failure to raise the issue on appeal. *See* ECF No. 3 at 47 ("My direct appeal was denied on 5/26/21; I did not argue my DNA claim on direct.").

The State now contends that Mr. Johnson procedurally defaulted on his DNA claim so cannot raise it in his federal habeas petition. ECF No. 10 at 8. The

---

[1] Mr. Johnson defines "source probability" as "the probability that someone other than the defendant is the source of the DNA found at the crime scene. ECF No. 3 at 50. He defines "random match probability" as "the probability that a [defendant's] DNA profile would match the DNA profile of an unrelated member of the general population who is chosen at random." *Id.*

procedural default doctrine prevents a federal court from addressing a state prisoner's habeas claim when the state court has declined to address the claim on procedural grounds, if that decision is based on "independent and adequate state grounds." *Coleman*, 501 U.S. at 729. "The state-law ground may be a substantive rule dispositive of the case, or a procedural barrier to adjudication of the claim on the merits." *Walker v. Martin*, 562 U.S. 307, 315 (2011).

The State argues that the Rhode Island Superior Court's application of *res judicata* constitutes an independent and adequate state ground that bars Mr. Johnson from further litigating his DNA claim. The doctrine of *res judicata* is codified at R.I. Gen. Laws § 10-9.1-8. *Miguel v. State*, 924 A.2d 3, 4 (R.I. 2007). This statute "provides a procedural bar not only to issues that have been raised and decided in a previous postconviction-relief proceeding, but also to 'the relitigation of any issue that *could have been litigated* in a prior proceeding, even if the particular issue was not raised.'" *Ferrell v. Wall*, 971 A.2d 615, 620 (R.I. 2009) (quoting *Ouimette v. State*, 785 A.2d 1132, 1138 (R.I. 2001)).

The question then becomes whether the state court's application of Rhode Island's *res judicata* statute is an independent and adequate state ground precluding federal habeas review. "A state procedural rule is 'independent and adequate' if it does not require the application of federal constitutional law and is consistently applied by the state court." *Bustamante v. Wall*, No. 06–07T, 2009 WL 30306, at *3 (D.R.I. Jan. 5, 2009) (citing *Dugger v. Adams*, 489 U.S. 401, 409-10 (1989); *Ake v. Oklahoma*, 470 U.S. 68, 75 (1985)). Clearly, the state statute does not require the

application of federal constitutional law.  The Rhode Island Supreme Court has also been consistent in applying the doctrine of *res judicata* to preclude PCR applicants from litigating issues that could have been raised in a prior proceeding but were not. *See, e.g., Mattatall v. State*, 947 A.2d 896, 905 (R.I.2008) ("This Court repeatedly has said that the doctrine of *res judicata* 'provides a procedural bar … to the relitigation of any issue that *could have been litigated* in a prior proceeding, even if the particular issue was not raised.'") (quoting *Ferrell*, 971 A.2d at 620 (R.I. 2009)); *see also Thornton v. State*, 332 A.3d 912, 916 (R.I. 2025).  Accordingly, the Court finds that the Rhode Island Superior Court's application of *res judicata* to Mr. Johnson's DNA claim serves as an independent and adequate state ground.

### 2. Interest-of-Justice Exception

However, the matter does not end there.  Mr. Johnson further contends that he is not procedurally barred from bringing his DNA claim because the statutory interest-of-justice exception applies.  ECF No. 12 at 9.  The *res judicata* statute contains "a very limited and narrow exception," providing that issues that were previously litigated or not raised "may nonetheless be the basis for a subsequent application for postconviction relief if the court finds it to be 'in the interest of justice.'" *Mattatall v. State*, 947 A.2d 896, 905 (R.I. 2008) (quoting *Ramirez v. State*, 933 A.2d 1110, 1112 (R.I. 2007)).

Though the Rhode Island Supreme Court has never definitively construed this "interest-of-justice" phrase, *see, e.g., Ferrell*, 971 A.2d at 621, the court's recent decision in *Thornton v. State* is helpful in evaluating Mr. Johnson's invocation of this

exception. 332 A.3d at 917. In that case, the court found that a prisoner's PCR application that was otherwise barred by *res judicata* did not fall within the interest-of-justice exception because the prisoner made no claim of actual innocence or newly discovered evidence. *Id.* Nor did the prisoner provide sufficient reasoning for failing to raise the basis for his habeas claim in a prior proceeding. *Id.* As such, the court found that the interest-of-justice exception did not save the prisoner's PCR application from being precluded. *Id.*

As in *Thornton*, Mr. Johnson does not assert actual innocence regarding his DNA claim,[2] nor does he explain why he failed to raise the issue on direct appeal. Instead, Mr. Johnson argues that he has newly discovered evidence of Ms. Wong's mishandling of DNA evidence in general that is persuasive in his case.[3] In *Monteiro v. Cormier*, Pawtucket police officers charged Joao Monteiro with murder, but those charges were later dropped. No. 21-cv-046-MSM-LDA, 2023 WL 6314658, at *12 (D.R.I. Sept. 28, 2023). In Mr. Monteiro's subsequent wrongful arrest suit, he claimed that Ms. Wong made a misleading statement to the police that his DNA was "a match" to the DNA found at the crime scene, even though it was consistent with the DNA of hundreds of others. *Id.* A federal court allowed his claim to proceed to trial, holding

---

[2] Mr. Johnson dedicates more time to making an actual innocence argument in his third ground for habeas relief, prosecutorial misconduct. ECF No. 12 at 17-18. As such, the Court addresses the actual innocence claim in further detail below.

[3] He also refers to four Massachusetts state court cases involving "tainted forensic evidence" that serve as "compelling precedent" that necessitate a reexamination of his case. ECF No. 12 at 10 (citing *Comm. for Pub. Counsel Servs. v. Attorney Gen.*, 480 Mass. 700 (2018); *Commonwealth v. Scott*, 467 Mass. 336 (2014); *Commonwealth v. Ware*, 471 Mass. 85 (2015); *Commonwealth v. Cotto*, 471 Mass. 97 (2015)). These cases of course do not hold precedential value over this Court.

that a jury could reasonably believe that Ms. Wong's communication was misleading. *Id.* The parties later settled out of court, and Mr. Johnson claims that this settlement is proof of Ms. Wong's misconduct, which could have similarly tainted his trial. ECF No. 12 at 9-11.

This argument is unconvincing for two reasons. First, a jury's potential finding of liability against Ms. Wong in a separate case does not by itself undermine the DNA testimony she provided at Mr. Johnson's trial. Second, at least three courts have reviewed and rejected Mr. Johnson's DNA claim. Both the trial court and the Rhode Island Supreme Court found that Ms. Wong's expert analysis "was not helpful in exculpating [Mr. Johnson]." *Johnson*, 251 A.3d at 881, 887. Mr. Johnson also raised this argument in his state PCR proceeding, but the court declined to revisit the issue. ECF No. 11-4 at 104. After careful review, this Court concludes that Mr. Johnson's DNA claim does not fall within the interest-of-justice exception.

Accordingly, because Mr. Johnson procedurally defaulted on his DNA claim and the interest-of-justice exception does not apply, the State's Motion to Dismiss as to ground one is GRANTED.

## B.    Ground Two: Eyewitness Identification

Mr. Johnson's second ground for relief involves Lymari Gonzalez's trial testimony. ECF No. 3 at 32-33. At Mr. Johnson's bail hearing in 2017, Ms. Gonzalez identified him for the first time as one of the men she had seen in the taxicab ten years earlier. *Johnson*, 251 A.3d at 877. Mr. Johnson moved to suppress this testimony, contending that the identification procedure was "impermissibly

suggestive" in violation of his due process rights because, when Ms. Gonzalez identified him, he was seated at counsel table "handcuffed between [his] two Caucasian[ ] attorneys and [was] the only African-American man at the defense table." ECF No. 3 at 32; *see also Johnson*, 251 A.3d at 877. He also claimed that this procedure resulted in unreliable identification evidence being presented against him at trial. *Id.* The trial court, applying the factors set forth by the Supreme Court in *Neil v. Biggers*, 409 U.S. 188, 199-200 (1972),[4] rejected his argument and determined that Ms. Gonzalez's testimony was independently reliable. *Id.* at 878-80.

Mr. Johnson appealed this decision to the Rhode Island Supreme Court. *Johnson*, 251 A.3d at 882. That court agreed with the trial court, finding that "the trial justice was not clearly erroneous in his finding that the *Biggers* factors weighed in the state's favor, thereby rendering Gonzalez's in-court identification independently reliable and admissible at trial." *Id.* at 884. Mr. Johnson continues to press this issue in his federal habeas petition. ECF No. 1 at 7-8; ECF No. 3 at 32-33. In response, the State argues that this Court should deny Mr. Johnson's claim because he "has not stated and cannot sustain a claim for habeas relief under 28 U.S.C. § 2254." ECF No. 10 at 10. The Court now must consider whether the state court's decision merits habeas relief.

---

[4] In *Biggers*, the Supreme Court identified five factors that courts should consider in assessing the reliability of an in-court identification: (1) the opportunity to view the defendant at the time of the crime; (2) the witness's degree of attention; (3) the accuracy of the witness's prior description of the defendant; (4) the witness's level of certainty in her identification at the time of the identification; and (5) the length of time between the crime and the identification. 409 U.S. at 199-200.

### 1.  Contrary To or Unreasonable Application of Federal Law

The Court may grant habeas relief if it determines that the Rhode Island Supreme Court's decision affirming the trial court's ruling was "'contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court.'" *Hensley v. Roden*, 755 F.3d 724, 730 (1st Cir. 2014) (quoting 28 U.S.C. § 2254(d)(1)).  The "contrary to" and "unreasonable application" clauses "have independent meaning." *Bell v. Cone*, 535 U.S. 685, 694 (2002) (citing *Williams v. Taylor*, 529 U.S. 362, 404-405 (2000)).  A state court decision is "contrary to" clearly established federal law if the court "'applies a rule that contradicts the governing law set forth' by the Supreme Court or 'confronts a set of facts that are materially indistinguishable from a decision of [the Supreme Court] and nevertheless arrives at a result different from [its] precedent.'" *Gomes v. Brady*, 564 F.3d 532, 537 (1st Cir. 2009) (alterations in original) (quoting *Williams*, 529 U.S. at 405-06 (2000)).  Here, Mr. Johnson does not identify a single Supreme Court case that was contrary to the Rhode Island Supreme Court's affirmance of the trial court's decision, so this avenue of relief is unavailable to him.

Alternatively, a state court decision constitutes an "unreasonable application" of clearly established federal law if the court "identifies the correct governing legal principle from the Supreme Court's then-current decisions but unreasonably applies that principle to the facts of the prisoner's case." *Aspen v. Bissonette*, 480 F.3d 571, 574 (1st Cir. 2007) (citing *Horton v. Allen*, 370 F.3d 75, 80 (1st Cir. 2004)).  "An 'unreasonable application of federal law is different from an incorrect application of

federal law,'" and a state court is afforded deference and latitude." *Hensley*, 755 F.3d at 731 (quoting *Harrington*, 562 U.S. at 101) (internal quotation marks omitted).

Mr. Johnson has also failed to demonstrate that the state court unreasonably applied the Supreme Court's precedent in *Biggers* to admit Ms. Gonzalez's eyewitness identification. In fact, he concedes that the state court was *not* unreasonable in applying the *Biggers* factors but was incorrect in its analysis. ECF No. 12 at 12-13 ("My trial justice was clearly wrong NOT unreasonable when he applied the 'Biggers Test.'"); *see also* ECF No. 3 at 45-46 ("My trial justice was clearly wrong … when he ruled on the five prongs of the 'Biggers Test' which the R.I. Supreme Court upheld on my direct appeal."). Mr. Johnson simply disagrees with the outcome of the court's analysis, but that is not enough to render the decision an unreasonable application of clearly established federal law.

### 2. Unreasonable Determination of the Facts

"The second scenario justifying habeas relief is if the state court adjudication led to 'a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.'" *Hensley*, 755 F.3d at 731 (citing 28 U.S.C. § 2254(d)(2)). There is a presumption that the state court's factual determinations are correct, and the habeas court must defer to these findings. *See* U.S.C. § 2254(e)(1); *Teti v. Bender*, 507 F.3d 50, 59 (1st Cir. 2007). The habeas applicant bears the burden of disproving the factual findings by "clear and convincing evidence" and demonstrating that the court's factual determinations were

"objectively unreasonable." *Hollis v. Magnusson*, 32 F.4th 1, 8 (1st Cir. 2022) (quoting *Miller-El v. Cockrell*, 537 U.S. 322, 340 (2003)).

In the context of this case, the *Biggers* analysis is "a mixed question of law and fact." *Cooper v. Bergeron*, 778 F.3d 294, 300 (1st Cir. 2015) (citing *Sumner v. Mata*, 455 U.S. 591, 597 (1982)). Indeed, Mr. Johnson partially frames his argument as a fact-based challenge, contending that the "trial justice was clearly wrong in his decision of fact when he ruled on the five prongs of the 'Biggers Test....'" ECF No. 3 at 45-46. In particular, he claims that the "trial justice misconceived and overlooked material evidence." *Id.* at 45.

This argument fails for two reasons. First, as described above, Mr. Johnson undermines his position by insisting in his briefing that the "trial justice was clearly wrong NOT unreasonable when he applied the 'Biggers Test' ... which was a decision of fact...." ECF No. 12 at 11. This concession prevents him from demonstrating that the factual determinations of the trial court were "objectively unreasonable."

Second, Mr. Johnson has failed to disprove the trial court's factual findings by "clear and convincing evidence." The crux of his argument is that Ms. Gonzalez provided police with two separate eyewitness statements over a decade apart. ECF No. 3 at 31. In the first statement, made in 2007, she did not identify Mr. Johnson as the man she observed commit the murder; in the second statement, made in 2017, she did. *Id.* at 30-31. Mr. Johnson maintains that the second statement is unreliable because law enforcement officials helped her "recreate" it "to fit the [state's] narrative." *Id.* at 47. He further contends that the trial justice erred by relying solely

on Ms. Gonzalez's 2017 statement when he conducted the *Biggers* analysis to find her testimony independently reliable. *Id.* at 45. But this is incorrect—the trial justice did consider both statements while analyzing the *Biggers* factors.[5] *Johnson*, 251 A.3d at 879. Mr. Johnson offers no additional evidence to rebut the presumption of correctness afforded to state court factual findings.

Accordingly, because Mr. Johnson neither prevails on his § 2254(d)(1) claim nor his 2254(d)(2) claim, the State's Motion to Dismiss as to ground two is GRANTED.

### C.    Ground Three: Prosecutorial Misconduct Eyewitness Identification

#### 1. Procedural Default

The final ground that Mr. Johnson raises in his petition involves what he characterizes as prosecutorial misconduct in the grand jury. ECF No. 3 at 23-24. He claims that the prosecutor who tried his case violated his due process rights when he "[k]nowingly presented perjured material testimony" to the grand jury through various witnesses. *Id.* at 18-19, 27-28. In response, the State again asserts the claim is procedurally barred because of the Rhode Island Superior Court's invocation of *res*

---

[5] Specifically, while analyzing the fifth and final *Biggers* factor, which relates to the length of time between the crime and the identification, the trial justice stated:

> Yes, it's a decade. It's a long time. I know that. I can't explain why the police officer decided not to . . . show this lady a photo array, and it's going to be great food for you to argue to the jury as to why they didn't, and that her identification ten years later must be flawed because the police dropped the ball. That's [an] argument that I will fully expect you to make.

*Johnson*, 251 A.3d at 879.

*judicata*, an "independent and adequate state ground" that precludes federal habeas review. ECF No. 10 at 15.

The Court agrees with the State. Mr. Johnson presented his prosecutorial misconduct claim to the Rhode Island Superior Court, but that court denied his claim based on *res judicata* because he failed to raise it on direct appeal. ECF No. 11-5 at 1. Mr. Johnson admitted that he did not raise the issue on appeal. ECF No. 1 at 9 ("I did not find out about this issue until after my direct appeal was denied."). As with his DNA claim, the state court's application of *res judicata* to the prosecutorial misconduct claim constitutes an independent and adequate state ground.

### 2. Interest-of-Justice Exception

Mr. Johnson also argues that the interest-of-justice exception applies to this ground for relief. ECF No. 12 at 17-18. As he puts it, "[his] constitutional rights being violated and [his] innocence right being unprotected … afford [him] the right to assert [his] claim in the interest of justice under § 10-9.1-8." *Id.* at 17. However, as explained above, the exception typically applies where there is newly discovered evidence or a claim of actual innocence.[6] *Thornton*, 332 A.3d at 917.

"Actual innocence," as the Supreme Court has come to define it, "means factual innocence, not mere legal insufficiency." *Bousley v. United States*, 523 U.S. 614, 623

---

[6] Another factor relevant to the interest-of-justice analysis is whether the habeas petition provided sufficient reasoning for failing to raise the basis for the habeas ground in a prior proceeding. *Thornton*, 332 A.3d at 917. The only purported rationale that Mr. Johnson provides for failing to raise the issue on direct appeal is that he did not discover the prosecutorial misconduct issue until after his direct appeal was denied. ECF No. 1 at 9. This explanation alone does not warrant application of the exception.

(1998). The standard "requires the habeas petitioner to show that a constitutional violation has probably resulted in the conviction of one who is actually innocent." *Schlup v. Delo*, 513 U.S. 298, 327 (1995). To show the requisite probability, "a petitioner must show that it is more likely than not that no reasonable juror would have found petitioner guilty beyond a reasonable doubt." *Id.*

Mr. Johnson does not assert a claim of actual innocence or offer newly discovered evidence to justify application of the interest-of-justice exception. His main argument is that the government violated his constitutional rights by knowingly presenting false testimony to the grand jury. ECF No. 12 at 19. Specifically, he alleges the prosecutor falsely told the grand jury that two incarcerated state witnesses that were testifying against him were not receiving anything in exchange for their testimony, when they later did receive favorable plea deals and sentence reductions from the government. ECF No. 3 at 4-7. He also claims the prosecutor knew these witnesses falsely testified that he had fled for a year after the murder, even though he was arrested in Rhode Island for an unrelated offense just two months later. *Id.* at 4-6, 8-9.

However, Mr. Johnson fails to explain how either of these allegations amount to a constitutional violation. Even assuming there were flaws in the grand jury proceeding, Mr. Johnson does not dispute that a jury later found him guilty of all charges at trial. *Johnson*, 251 A.3d at 880; ECF No. 11-4 at 53-54. As the First Circuit has explained, "[a]ll but the most serious errors before the grand jury are rendered harmless by a conviction at trial." *United States v. Reyes-Echevarria*, 345

F.3d 1, 4 (1st Cir. 2003) (citing *United States v. Mechanik*, 475 U.S. 66, 73 (1986)). "Usually, the trial jury's verdict provides an adequate safeguard against the failings of the grand jury process." *United States v. Ortiz de Jesus*, 230 F.3d 1, 4 (1st Cir. 2000). The evidence offered at Mr. Johnson's trial sufficiently established not only probable cause that the crimes alleged occurred, but also that he was guilty of the crimes beyond a reasonable doubt. Mr. Johnson therefore cannot make out an actual innocence claim because he fails to show that it is more likely than not that a reasonable juror would not have found him guilty beyond a reasonable doubt.

As such, because procedural default bars further consideration of Mr. Johnson's prosecutorial misconduct claim and because the interest-of-justice exception does not apply, the State's Motion to Dismiss as to ground three is GRANTED.

## V.    CONCLUSION

For the foregoing reasons, the Court GRANTS the State's Motion to Dismiss (ECF No. 10) and DISMISSES Mr. Johnson's Petition (ECF No. 1).


IT IS SO ORDERED.


*s/John J. McConnell, Jr.*

_____
JOHN J. MCCONNELL, JR.
Chief Judge
United States District Court

December 29, 2025